UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

ISAIAH N. JOHNSON,                                           :
                                                             :
                                              Plaintiff,     :
                                                             :
                          -v-                                :
                                                             :
COSTAR GROUP INC.,                                           :
                                                             :
                                              Defendant.     :
                                                             :
---------------------------------------------------------------X

```
┌────────────────────────────────────┐
│ USDC-SDNY                           │
│ DOCUMENT                            │
│ ELECTRONICALLY FILED                │
│ DOC #:_____              │
│ DATE FILED:_7/21/14____             │
└────────────────────────────────────┘
```

13-cv-8600-RA

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

*Pro se* Plaintiff Isaiah Johnson commenced this action against Defendant CoStar Realty

Information, Inc. ("CoStar") on November 26, 2013, alleging employment discrimination on the

basis of race in violation of Title VII, 42 U.S.C. § 2000e *et seq.* On February 27, 2014, CoStar

filed the motion to dismiss the complaint and compel arbitration that is presently before the

Court. CoStar also seeks to recover the costs and fees it has incurred in litigating this motion.

For the reasons that follow, CoStar's motion is granted in part and denied in part.

**BACKGROUND**

In June of 2012, Johnson was offered a position as an account executive in CoStar's New

York office. (Edgerton Aff. ¶ 4.) In connection with the employment offer, the parties signed an

agreement (the "Agreement") entitled "Terms and Conditions of Employment." (Campbell Aff.

Ex. A at 1, 8.) Section 5.10 of the Agreement pertains to the "Arbitration of Controversies" and

provides as follows:

> (a) <u>When Arbitration is Required</u>. In the event of any dispute, claim or
> controversy cognizable in a court of law between the Company and the Employee
> concerning any aspect of the employment relationship, including disputes upon
> termination, the parties agree to submit such dispute to final and binding

arbitration before a single arbitrator pursuant to the provisions of the American Arbitration Association's Employment Dispute Resolution Procedures. The parties acknowledge that this obligation to arbitrate disputes applies to claims for discrimination or harassment under . . . Title VII of the Civil Rights Act of 1964
. . . .

(Id. at 6.) The signature page further provides in bolded text that "Employee understands that by signing this Agreement, Employee agrees to resolve certain disputes with the Company by means of binding arbitration as set forth in paragraph 5.10, above." (Id. at 8.)

Section 4 of the Agreement states that "in the event of any breach or anticipatory breach of this Agreement by Employee, . . . the parties agree that the Company shall be entitled to . . . recovery of all reasonable sums and costs, including attorney's fees, incurred by the Company to defend or enforce the provisions of this Agreement." (Id. at 5.) In addition, Section 5.7 provides that "[a] party who breaches the terms of this Agreement shall pay to the non-defaulting party all of the non-defaulting party's costs and expenses, including attorneys' fees, incurred in enforcing the terms of the Agreement, subject to the provisions of Section 5.10(f)," which limits the fees and costs to be paid by the Employee in the event of arbitration. (Id. at 6-7.) The Agreement also contains a choice-of-law clause that provides that the "Agreement shall be governed by the laws of the District of Columbia, without reference to its conflict of law provisions." (Id. at 5.)

Johnson avers that, "[d]ue to the time constraints given to accept employment, [he] did not have enough time to fully read and understand the terms of the [A]greement." (Johnson Aff. at 2.) He further claims that he "should have been clearly advised to hire an attorney to assist in understanding the [A]greement" and that the Agreement "overwhelmingly favors the employer." (Id.) The email from CoStar's Recruiting Coordinator that transmitted Johnson's formal offer package, including the Agreement, requested that all documents be signed and returned "within two business days." (Pl.'s Apr. 16, 2014 letter, ECF No. 28, at 3.)

2

After Johnson filed the complaint in this action, CoStar sent Johnson a letter dated

January 21, 2014 advising him that the Agreement required that his claims be submitted to

binding arbitration. (Campbell Aff. Ex. C at 1.) The letter further warned Johnson that, unless

he immediately withdrew his complaint, CoStar would seek to collect all costs and fees

associated with his alleged breach of the Agreement. (Id.)

## DISCUSSION

"Section 2 of the Federal Arbitration Act (FAA) makes agreements to arbitrate 'valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract.'" AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1744 (2011)

(quoting 9 U.S.C. § 2).[1]  Section 4 "requires courts to compel arbitration 'in accordance with the

terms of the agreement' upon the motion of either party to the agreement (assuming that the

'making of the arbitration agreement or the failure . . . to perform the same' is not at issue)." Id.

at 1748 (alteration in original). "In line with these principles, courts must place arbitration

agreements on an equal footing with other contracts, and enforce them according to their terms."

Id. at 1745 (citations omitted).

A court asked to compel arbitration must consider four issues:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must
> determine the scope of that agreement; third, if federal statutory claims are
> asserted, it must consider whether Congress intended those claims to be
> nonarbitrable; and fourth, if the court concludes that some, but not all, of the
> claims in the case are arbitrable, it must then decide whether to stay the balance of

---

[1] The FAA covers arbitration provisions that concern "contract[s] evidencing a transaction
involving commerce." 9 U.S.C. § 2. The Supreme Court has "interpreted the term 'involving
commerce' in the FAA as the functional equivalent of the more familiar term 'affecting
commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress'
Commerce Clause power." Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003).
"Employment contracts, except for those covering workers engaged in transportation, are
covered by the FAA." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 289 (2002).

the proceedings pending arbitration.

JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004) (alteration in original) (quoting Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 75-76 (2d Cir. 1998)).[2] "In the context of motions to compel arbitration brought under the [FAA], the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003).

## A. Did the Parties Agree to Arbitrate?

Johnson and CoStar undoubtedly agreed to arbitrate certain disputes. Whether the Agreement as a whole is unconscionable, as Johnson claims, is a question for the arbitrator and does not prevent enforcement of the arbitration provision.

It is undisputed that Johnson and CoStar signed the Agreement and that the Agreement contains the arbitration provision described above. Johnson contends, however, that the "two business days" within which he was to review and return the Agreement "simply was not enough time to adequately review and/or have an attorney review the contracts." (Pl.'s Apr. 16, 2014 letter, ECF No. 28, at 1.) He further argues that "the 'terms of employment' agreement is clearly substantive [sic] unconscionable as it overwhelmingly favors the employer." (Johnson Aff. at 2.) Consequently, Johnson asks the Court to "deem the 'terms of employment' unenforceable and invalid." (Id.) CoStar argues that, regardless of whether District of Columbia or New York law

---

[2] The formation and scope of the arbitration agreement are considered issues of "arbitrability" and are for judicial determination "unless there is clear and unmistakable evidence that the parties agreed to arbitrate th[ose] question[s]." Schneider v. Kingdom of Thailand, 688 F.3d 68, 71 (2d Cir. 2012); see also Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002). Although "clear and unmistakable evidence" includes the express incorporation of arbitration rules that empower the arbitrator to decide questions of arbitrability, Schneider, 688 F.3d at 72, and the Agreement incorporates the American Arbitration Association's Employment Dispute Resolution Procedures, (Campbell Aff. Ex. A at 6), because neither party raises this issue, the Court proceeds in accordance with their assumption that questions of arbitrability are for judicial resolution.

4

applies, the Agreement is neither procedurally nor substantively unconscionable.  (Def.'s Reply

2.)

Section 2 of the FAA provides that arbitration agreements are "enforceable, save upon

such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This

section "permits agreements to arbitrate to be invalidated by 'generally applicable contract

defenses, such as . . . unconscionability.'"  Concepcion, 131 S. Ct. at 1746 (quoting Doctor's

Assocs., Inc. v. Casarotto, 517 U.S. 681, 682 (1996)).  "A recurring question under § 2 is *who*

should decide whether 'grounds . . . exist at law or in equity' to invalidate an arbitration

agreement."  Preston v. Ferrer, 552 U.S. 346, 353 (2008) (emphasis added) (second alteration in

original).

Here, Johnson's challenge to the Agreement must be considered by an arbitrator, not the

Court.  "There are two types of validity challenges under § 2[.]"  Rent-A-Ctr., W., Inc. v.

Jackson, 561 U.S. 63, 70 (2010).  "One type challenges specifically the validity of the agreement

to arbitrate."  Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006).  "The other

challenges the contract as a whole, either on a ground that directly affects the entire agreement

(*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the

contract's provisions renders the whole contract invalid."  Id.

Section 2 of the FAA "states that a 'written provision' 'to settle by arbitration a

controversy' is 'valid, irrevocable, and enforceable' *without mention* of the validity of the

contract in which it is contained."  Rent-A-Ctr., 561 U.S. at 70.  As a result, "only the first type

of challenge is relevant to a court's determination whether the arbitration agreement at issue is

enforceable," and "a party's challenge to another provision of the contract, or to the contract as a

whole, does not prevent a court from enforcing a specific agreement to arbitrate."  Id.  It follows

that "attacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken." Preston, 552 U.S. at 353; see also Buckeye Check Cashing, 546 U.S. at 449 ("[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403 (1967); JLM Indus., Inc., 387 F.3d at 170; Kowalewski v. Samandarov, 590 F. Supp. 2d 477, 487 (S.D.N.Y. 2008) (collecting cases); Bank of Am., N.A. v. D.C., 80 A.3d 650, 663-64 (D.C. 2013), cert. denied, 134 S. Ct. 2293 (2014).

Johnson's arguments go to the validity of the Agreement as a whole, rather than the arbitration clause in particular. Johnson repeatedly asks the Court to deem the "'terms of employment' agreement" or "terms and conditions" to be unenforceable. (Johnson Aff. at 2; Pl.'s Apr. 16, 2014 letter, ECF No. 28, at 1-2.) As these phrases approximate the title of the Agreement—"Terms and Conditions of Employment, (Campbell Aff. Ex. A at 1)—it is clear that he is not referring solely to the arbitration clause.

The argument that Johnson did not have enough time to review the offer package or to seek assistance of counsel applies with equal force to all provisions contained in the Agreement. See Kowalewski, 590 F. Supp. 2d at 487 (referring to arbitration the plaintiffs' contention that they were expressly prohibited from reading contracts containing arbitration clauses before signing them); Abduljaami v. LegalMatch.com, Inc., No. 05 Civ. 9464 (GEL), 2006 WL 1096378, at *4 (S.D.N.Y. Apr. 24, 2006) (referring claims of adhesion and fraud in the inducement to the arbitrator because the plaintiff's allegations and email communications with the defendant's representatives did not establish "that these supposedly high-pressure or deceptive tactics were employed specifically with respect to the arbitration provision").

Finally, Johnson's claim of "substantive" unconscionability is not specific to the arbitration clause, as it assails "the 'terms of employment' agreement" in its entirety. (Johnson Aff. at 2.) See Rent-A-Ctr., 561 U.S. at 71 ("[I]n an employment contract many elements of alleged unconscionability applicable to the entire contract (outrageously low wages, for example) would not affect the agreement to arbitrate alone."). While Johnson may present these arguments to the arbitrator, they provide no basis for this Court to deny CoStar's motion.

Johnson's claim of unconscionability fits comfortably within the language of the arbitration clause. "[R]ecognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow." Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001). "Where the arbitration clause is broad, 'there arises a presumption of arbitrability' and arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it.'" Id. (quoting Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 23 (2d Cir. 1995)).

The Agreement's arbitration provision is broad. Subject to exceptions not applicable here, it covers "any dispute, claim or controversy . . . concerning any aspect of the employment relationship, including disputes upon termination." (Campbell Aff. Ex. A at 6.) This language is expansive enough to encompass the parties' dispute over whether the terms and conditions of employment contained in the Agreement were unconscionable. In any event, "[b]ecause we cannot say 'with positive assurance' that a claim [of unconscionability] [i]s not within the scope

7

of the arbitration clause, we cannot say that the presumption in favor of arbitration has been overcome." Oldroyd, 134 F.3d 72, 77 (2d Cir. 1998).[3]

Thus, the FAA and the text of the arbitration clause compel the conclusion that Johnson's unconscionability argument must be addressed to the arbitrator, rather than this Court.[4]

## B. Does Johnson's Claim Fall within the Scope of the Arbitration Clause?

Understandably, Johnson does not argue that his Title VII discrimination claim is outside the scope of arbitrable issues. In addition to covering "any dispute, claim or controversy . . . concerning any aspect of the employment relationship," the arbitration provision explicitly provides that "the parties acknowledge that this obligation to arbitrate disputes applies to claims for discrimination or harassment under . . . Title VII of the Civil Rights Act of 1964." (Campbell Aff. Ex. A at 6.)

---

[3] "When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options, 514 U.S. at 944. The Agreement's choice-of-law clause selects the law of the District of Columbia, (Campbell Aff. Ex. A at 5), and the parties do not dispute its applicability. District of Columbia law is in accordance with the federal presumption in favor of arbitration. See Parker v. K & L Gates, LLP, 76 A.3d 859, 867 (D.C. 2013) ("To determine whether a particular claim is covered by an arbitration clause, we 'inquire merely whether the arbitration clause is susceptible of an interpretation that covers the dispute.'" (quoting Haynes v. Kuder, 591 A.2d 1286, 1289 (D.C. 1991)).

[4] The AAA rules incorporated into the arbitration clause reinforce the conclusion that Johnson's unconscionability argument is arbitrable:

> The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

AAA Employment Arbitration Rules and Mediation Procedures, Rule 6(b) (available at www.adr.org).

## C. Did Congress Intend for Title VII Claims to Be Nonarbitrable?

Nor does Johnson contend that Congress did not intend for Title VII claims to be

arbitrable. "The burden of showing such legislative intent lies with the party opposing

arbitration." Oldroyd, 134 F.3d at 78. "Courts have consistently found that [Title VII] claims

can be subject to mandatory arbitration." Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144,

147 (2d Cir. 2004); see also Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 120 (2d Cir.

2010); Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 204-05 (2d Cir. 1999).

Indeed, "Congress specifically approved arbitration of Title VII claims in the Civil Rights Act of

1991, expressly stating that the 'use of alternative means of dispute resolution, including . . .

arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law

amended by this title.'" Parisi v. Goldman, Sachs & Co., 710 F.3d 483, 487 (2d Cir. 2013)

(alteration in original) (quoting Civil Rights Act of 1991, Pub. L. No. 102–166, § 118, 105 Stat.

1071 (1991)).

## D. Should the Action be Stayed or Dismissed?

In light of the Court's conclusion that the only claim asserted in the complaint is

arbitrable, the Court has the choice of staying the action or dismissing it entirely. See Cap

Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 363 (2d Cir. 2003). CoStar

requests dismissal. (Def.'s Mem. 10.)

This district does not appear to have reached a consensus regarding the proper course of

action in this situation. Compare Dixon v. NBCUniversal Media, LLC, 947 F. Supp. 2d 390,

405 (S.D.N.Y. 2013) ("Courts in this district have . . . chosen to stay proceedings, even where

urged to dismiss.") with Kowalewski, 590 F. Supp. 2d at 491 ("[W]here defendants have sought

dismissal rather than a stay, courts in this district have granted dismissal." (internal quotation

marks omitted)). However, "a dismissal renders an order appealable under [9 U.S.C.] § 16(a)(3), while the granting of a stay is an unappealable interlocutory order under § 16(b)." Salim Oleochemicals v. M/V SHROPSHIRE, 278 F.3d 90, 93 (2d Cir. 2002). Because "[u]nnecessary delay of the arbitral process through appellate review is disfavored," id., the Court exercises its discretion to stay the action pending the completion of arbitration.

### E. Is CoStar Entitled to Fees and Costs?

Lastly, CoStar asks the Court to award it "the damages, fees and costs incurred in making [its] motion" to enforce the arbitration provision. (Def.'s Mem. 11.) It argues that Johnson's breach of the Agreement entitles CoStar to such an award under Sections 4 and 5.7 of the Agreement. (Id. (quoting Campbell Aff. Ex. A at 5-7.)) CoStar fails to recognize, however, that its claim, too, is arbitrable.

Whether CoStar is entitled to recover under the Agreement is an issue unambiguously within the scope of the arbitration provision, which covers "any dispute, claim or controversy cognizable in a court of law between the Company and the Employee concerning any aspect of the employment relationship, including disputes upon termination." (Id. at 6.) Broad arbitration clauses of this sort have accordingly been construed to cover claims for attorneys' fees. See PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1202 (2d Cir. 1996). Even if the arbitration provision in the Agreement were unclear, CoStar could not "overcome the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995).

The cases CoStar cites do not persuade the Court otherwise. In ACE Ltd. v. CIGNA Corp., "ACE d[id] not dispute that CIGNA [wa]s entitled to attorneys' fees and expenses under the provisions of the Acquisition Agreement" and asserted only "that the amount of fees and

expenses sought by CIGNA [wa]s unreasonable." No. 00 Civ. 9423 (WK), 2001 WL 1286247, at *1 (S.D.N.Y. Oct. 22, 2001). This was understandable, as the relevant arbitration clause was "limited to 'points of disagreement concerning Tax matters'" and accordingly was found to be "a narrow arbitration clause." ACE Ltd. v. CIGNA Corp. & CIGNA Holdings, Inc., No. 00 Civ. 9423 (WK), 2001 WL 767015, at *3 (S.D.N.Y. July 6, 2001).

The citation to M.W. Realty Associates v. 805 Third Ave. Co., 480 N.Y.S.2d 674 (N.Y. Sup. Ct. 1984), is inapposite, as the case did not involve arbitration. Moreover, contrary to CoStar's representation, the case involved an agreement to convey air rights, id. at 674—not an "employment agreement," (Def.'s Mem. 12).

Finally, the court in Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd. acknowledged that the prevailing party's right to attorneys' fees under the parties' agreement *fell within that agreement's broad arbitration clause.* See No. 10 Civ. 1853 (PGG), 2011 WL 1002439, at *2-3 (S.D.N.Y. Mar. 16, 2011), aff'd, 483 F. App'x 634 (2d Cir. 2012). Although the court proceeded to award fees, it did so pursuant to its "inherent power" to assess fees against a losing party that had acted in "bad faith." Id. at *3-4.

CoStar's request for fees is denied. It may address its arguments to the arbitrator.

## CONCLUSION

For the foregoing reasons, CoStar's motion to compel arbitration is granted, its motion to dismiss the complaint is denied, and its motion for fees and costs is denied. This action is stayed pending the completion of arbitration.

The Clerk of Court is respectfully instructed to terminate the motion pending at Docket

Number 13.

SO ORDERED.

Dated:      July 21, 2014
            New York, New York

Ronnie Abrams
United States District Judge